IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENERAL MOTORS LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Case No. 24-cv-09937<br><br>**Judge Jeremy C. Daniel**<br><br>**Magistrate Judge Gabriel A. Fuentes** |

**SUPPLEMENTAL MEMORANDUM IN RESPONSE TO [13]**

In response to [13], Plaintiff General Motors LLC ("GM" or "Plaintiff") submits the following memorandum establishing that joinder is proper.

Cases like this are one of the few effective mechanisms available to combat anonymous e-commerce store operators who trade on Plaintiff's reputation and goodwill by peddling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (collectively, the "Counterfeit GM Products"). Joining Defendants at this stage is both proper and necessary to combat the unique problem of offshore Internet-based counterfeiters who exploit the anonymity and mass reach afforded by the Internet, as well as the cover afforded by international borders. Requiring Plaintiff to "[file] individual causes of action against each counterfeiter ignores the" "swarm of attacks" that Plaintiff faces on its trademark rights. *Bose Corp. v. P'ships, et al.*, 334 F.R.D. 511, 517 (N.D. Ill. 2020).

A January 24, 2020 report titled *Combating Trafficking in Counterfeit and Pirated Goods* prepared by the U.S. Department of Homeland Security, Office of Strategy, Policy & Plans provides further insight regarding operation of e-commerce stores like the nondescript e-commerce stores listed in Schedule A to the Complaint ("Seller Aliases"). Exhibit 1 to the Declaration of Justin R. Gaudio (the "Gaudio Dec."). Specifically, the report found that:

> Not only can counterfeiters set up their virtual storefronts quickly and easily, but they can also set up new virtual storefronts when their existing storefronts are shut down by either law enforcement or through voluntary initiatives set up by other stakeholders such as market platforms, advertisers, or payment processors.
> . . .
> In some cases, counterfeiters hedge against the risk of being caught and their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. A key underlying problem here is that on at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling. In the absence of full transparency, counterfeiters can quickly and easily move to a new virtual store if their original third-party marketplace is taken down.
> . . .
> Platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, nor to link one seller profile to other profiles owned by that same business, or by related businesses and owners. In addition, the party that appears as the seller on the invoice and the business or profile that appears on the platform to be the seller, may not always be the same. This lack of transparency

> allows one business to have many different profiles that can appear unrelated. It also allows a business to create and dissolve profiles with greater ease, which can obfuscate the main mechanism that consumers use to judge seller credibility, namely reviews by other buyers.

*Id.* at pp. 12, 22, 39.

Joinder, particularly at the preliminary pre-discovery stage, is proper because Fed. R. Civ. P. 20's inclusion of the term "occurrence" grants the Court broad discretion to join anonymous defendants who participate in such a series of unlawful occurrences in a single action. *See Bose Corp.*, 334 F.R.D. at 516. Plaintiff's well-pled allegations establish that joinder is proper because Defendants, who all fit the same profile, are working in a similar manner and during the same time period to sell Counterfeit GM Products, as part of the same series of "occurrences" of mass harm, *i.e.*, the swarm of all Defendants simultaneously attacking Plaintiff's federally registered trademarks. *Id.*; *see also Zou v. The Entities, et al.*, No. 23-cv-16600 (N.D. Ill. Mar. 8, 2024) (unpublished) (Docket No. 60) ("Taking [plaintiff]'s allegations as true, there is a clear logical relationship between Defendants' actions, as each Defendant copied [plaintiff]'s work, manufactured counterfeit versions, and set up online stores to sell the counterfeits under a cloak of anonymity. Based on these allegations, [plaintiff] sufficiently alleged that each Defendants' infringement is part of the same series of occurrences."); *Oakley, Inc. v. The P'ships, et al.,* No. 1:20-cv-05972 (N.D. Ill. Nov. 9, 2020) (unpublished) (Docket No. 27) ("Plaintiff has sufficiently demonstrated that [the asserted claims] arise out of the same occurrence or series of occurrences"). This establishes a logical relationship supporting joinder.

The Federal Rules of Civil Procedure provide the Court with broad discretion and flexibility to reevaluate joinder as a case progresses. *See UWM Student Ass'n v. Lovell*, 888 F.3d 854 (7th Cir. 2018); *see also* Fed. R. Civ. P. 21 ("On motion or on its own, **the court may at any time**, on just terms, add or drop a party. The court may also sever any claim against a party.")

(emphasis added). The Court may sever a defendant and restructure the litigation as appropriate if a defendant appears and joinder no longer serves judicial economy. *See Pink Floyd (1987) Ltd. v. P'Ships, et al.*, 2021 WL 7179622, at *1 (N.D. Ill. Oct. 21, 2021); *see also Roadget Bus. Pte. Ltd. v. Individuals, et al.*, 2024 WL 2763735, at *4, n.5 (N.D. Ill. May 30, 2024) (granting motion to sever; keeping non-appearing defendants joined, but severing appearing defendants).

Joinder of anonymous Defendants at this stage is also consistent with hundreds of factually similar cases[1] and comports with the strongly encouraged policy of "entertaining the broadest possible scope of action consistent with fairness to the parties." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966); s*ee also Bose Corp.*, 334 F.R.D. at 517 (e-commerce stores offering for sale counterfeit Bose products properly joined); *Oakley, Inc. v. The P'ships, et al.*, No. 1:20-cv-05972 (N.D. Ill. Nov. 9, 2020) (unpublished) (Docket No. 27) ("Plaintiff has sufficiently demonstrated that [the asserted claims] arise out of the same occurrence or series of occurrences. Therefore, joinder of the 'Schedule A' Defendants is proper at this preliminary stage."); *Weifang Tengyi Jewelry Trading Co. Ltd v. The P'ships, et al*., No. 1:18-cv-04651 (N.D. Ill. July 5, 2018) (unpublished) (Docket No. 150) ("[Plaintiff's] claims against [Defendants] rest in substantial part on the same legal and factual grounds as [Plaintiff's] claims against the other defendants, including that [Defendants] were involved in a counterfeiting network with the other defendants. Given the nature of [Plaintiff's] claims, joinder is proper under Civil Rule 20(a)(2)."); *Too Faced Cosmetics, LLC v. Operators of KTKT Store, et al*., No. 19-cv-07762 (N.D. Ill. Feb. 12, 2020) (Lefkow, J.)

---

[1] Similar cases against multiple e-commerce store seller aliases have been filed across the country for nearly a decade. *See, e.g. Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.,* No. 4:10 CV 2672 (S.D. Tex. Aug. 2, 2010); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.,* No. 10 CIV 1630 (S.D.N.Y. Mar. 16, 2010); *Louis Vuitton Malletier v. aaalvshop.com, et al*., No. 19-cv-61986 (S.D. Fla. Nov. 21, 2019); *Volvo Car Corporation, et al. v. The Unincorporated Associations Identified in Schedule A*, No. 18-cv-00977 (E.D. Va. Feb. 6, 2019); *CCA and B, LLC v. Douyong toy, et al*., No. 19-cv-01851 (N.D. Ga. Apr. 25, 2019); *Talavera Hair Products, Inc. v. Taizhou Yunsung Elec. Appliance Co., Ltd., et al*., No. 18-cv-00823 (S.D. Ca. Apr. 30, 2018), including hundreds of cases in the Southern District of New York and the Southern District of Florida. *See* Gaudio Dec. at ¶ 3.

(docket entries 22, 27, 30) (finding joinder appropriate in factually similar case after supplemental briefing); *Gold's Gym Licensing LLC v. Operators of dropshipping fast ship Store, et al.*, No. 19-cv-07446 (N.D. Ill. Jan.15, 2020) (Lefkow, J.) (docket entries 32, 38, 43) (same); *Otter Products, LLC, et al. v. James Chen, et al.*, No. 16-cv-06807 (N.D. Ill. Aug. 31, 2016) (Shadur, J.) (same). Otherwise, brand owners are forced to play an endless game of "whack-a-mole" submitting takedown requests to marketplace platforms for every infringing listing. This creates no deterrence for listing an infringing item in the first place and counterfeiters swiftly move their profits offshore.

## I. LEGAL STANDARD

### A. Permissive Joinder Under Fed. R. Civ. P. 20(a)

The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The Supreme Court has stated that under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012) (quoting *Gibbs*, 383 U.S. at 724); *see also Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161 (5th Cir. Feb. 14, 2022) (affirming discretionary joinder of defendants in factually similar case). The Seventh Circuit has noted that the purpose of a liberal Rule 20(a) joinder requirement "is to enable economies in litigation." *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000); *see also Hohlbein v. Heritage Mut. Ins. Co.,* 106 F.R.D. 73, 78 (E.D. Wis. 1985) ("The unmistakable purpose for the Rule is to promote trial convenience through the avoidance of multiple lawsuits, extra expense to the parties, and loss of time to the Court and the litigants appearing before it."). Courts have not provided a bright-line definition for "transaction or occurrence" so it remains

4

flexible enough to allow effective case management. *See In re EMC Corp.*, 677 F.3d at 1358 (citing 7 Charles Alan Wright et al., Federal Practice and Procedure § 1653 (3d ed. 2001)).

As to the first prong of Fed. R. Civ. P. 20(a)(2), courts have applied this "transaction or occurrence" requirement using a "case-by-case approach" based on a "flexib[le] . . . standard [that] enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20." *In re EMC Corp.*, 677 F.3d at 1358. The Seventh Circuit has not fashioned a definitive standard for determining what constitutes a single transaction or occurrence. *See Bailey v. N. Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000) (explaining that "no hard and fast rules have been established" in this context). Similarly, the phrase "transaction or occurrence" is not defined in Rule 20(a); however, courts have looked to the similar "transaction or occurrence" test for compulsory counterclaims in Rule 13(a). *Mosley*, 497 F.2d at 1333; *PTG Nev., LLC v. Doe*, 2016 U.S. Dist. LEXIS 83546, at *7 (N.D. Ill. June 28, 2016).

For the purposes of Rule 13(a), the Supreme Court has stated that "[t]ransaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. N.Y. Exch.*, 270 U.S. 593, 610 (1926); *see also Burlington N.R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990) (applying "logical relationship" test to determine whether the "transaction or occurrence" is the same for purposes of Rule 13(a)). Factors considered by Courts in this District include whether the alleged conduct occurred during the same general time period, involved the same people and similar conduct. *Lozada v. City of Chicago*, 2010 U.S. Dist. LEXIS 89231, at *7 (N.D. Ill. Aug. 30, 2010). The Court has "considerable discretion" and "flexibility" in determining whether plaintiffs have plausibly alleged such a relationship. *UWM Student Ass'n*, 888 F.3d at

5

863. Other Circuits have applied the "logical relationship" test to interpret "same transaction or occurrence" as it appears in Rule 20(a) and found that "all reasonably related claims for relief by or against different parties" can be tried in a single proceeding. *Mosley*, 497 F.2d at 1333. Absolute identity of all events is unnecessary. *Id*.; *see also Alexander v. Fulton County,* 207 F.3d 1303, 1323 (11th Cir. 2000)).

Fed. R. Civ. P. 20 similarly does not define "occurrence" and courts have not considered the meaning of "occurrence" apart from the meaning of "transaction." *Bose Corp.*, 334 F.R.D. at 516. However, "canons of construction ordinarily suggest that terms connected by a disjunctive . . . be given separate meanings," and the dictionary definitions suggest that "occurrence" is much broader than "transaction." *Id*. An "occurrence" is defined as something that simply happens or appears, and is not necessarily the product of joint or coordinated action. *Id*. *See also Oakley, Inc. v. The P'ships, et al.*, No. 1:20-cv-05972 (N.D. Ill. Nov. 9, 2020) (unpublished) (Docket No. 27) ("Plaintiff has sufficiently demonstrated that [the asserted claims] arise out of the same occurrence or series of occurrences").

## II. WELL-PLEADED ALLEGATIONS ESTABLISH JOINDER

"In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true." *Desai v. ADT Sec. Services, Inc.*, 2011 U.S. Dist. LEXIS 77457, at *8 (N.D. Ill. July 18, 2011). A court must construe the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences" in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plaintiff must only put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (7th. Cir. 2009).

Plaintiff's well-pled allegations[2] establish that the Seller Aliases are all operating in the same series of occurrences and, therefore, joinder is proper. To clarify, Plaintiff has not alleged that each Defendant is directly working with every other Defendant, nor is that what joinder requires. Each of the Seller Aliases fits the following profile: (1) Defendants use nondescript Seller Aliases ([1] at ¶¶ 19-20; [2]), (2) operate in foreign jurisdictions with little or no credible information regarding Defendants' identity and physical addresses provided ([1] at ¶ 12), and (3) Defendants show evidence of market coordination, *i.e.*, using the same advertising and marketing strategies to target consumers in the U.S. market, and same tactics to avoid detection and liability ([1] at ¶¶ 17-23).[3] *See* Gaudio Dec. at ¶¶ 12-26.

E-commerce store operators like Defendants communicate with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits. [1] at ¶ 22. These platforms provide information on tactics including: identifying test purchases that were placed by a rights owner's investigators, deleting or modifying the infringing listings, and moving funds out of their platform accounts. *See* Gaudio Dec. at ¶¶ 12-14. Websites such as sellerdefense.cn track cross-border infringement cases, including cases filed by Plaintiff, providing Defendants with an early warning to act before any injunctive relief is in place. *See id.* Information about this Case and lawsuits like it are regularly

---

[2] Plaintiff's allegations are referring to unique identifiers, not just general common elements found on e-commerce stores. The Court should avoid speculating that the unique identifiers are a coincidence and that Defendants are merely acting similarly, but independently of each other. The Court must construe the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences" in favor of the plaintiff. *Tamayo*, 526 F.3d at 1081.

[3] The allegations in Plaintiff's Complaint [1] also make clear that Plaintiff is not arguing and suggesting that each Defendant is working with each other. *See* [1] at ¶ 13, 17-23.

7

posted on China-based social media platforms, forums like zhihu.com, and even video streaming platforms like bilibili.com and douyin.com. *See id.* Since the Court must make all reasonable inferences in Plaintiff's favor, the Court should infer that these services are for and used by Defendants, because there is no other demographic this information serves.

Coordination between e-commerce stores like those operated under the Seller Aliases is also evidenced by specific, similar keywords used by e-commerce counterfeiters. In this Case, many of the sellers are selling the same or similar Counterfeit GM Products, use the same or similar product titles and descriptions, and appear to source or distribute through similar channels. *See* Gaudio Dec. at ¶¶ 26-27. Additionally, as shown by third-party websites,[4] e-commerce stores like the Seller Aliases use specific wording in the product description, written in English, that is designed to ensure that the product can be easily found by a search engine without using or calling attention to the brand name. *See e.g., River Light V, L.P. v. Zhangyali*, 2016 U.S. Dist. LEXIS 111301, at *9 (N.D. Ill. Aug. 22, 2016) (e-commerce store using the words "double T" and "branded" but not "Tory Burch."). Moreover, in Plaintiff's counsel's over ten years of experience, defendants that fit the same profile as the Seller Aliases exhibit a wide range of types of coordination. *See* Gaudio Dec. at ¶¶ 15-22. Both Plaintiff and the Court are entitled to rely on experience with similarly situated Defendants. *See Cisco Sys.*, 2020 U.S. Dist. LEXIS 158008, at *10; *see generally In re Vuitton Et Fils S.A.*, 606 F.2d 1 (2d Cir. 1979) (affidavit of similarly situated defendants central to finding the *ex parte* temporary order should be granted.).

---

[4] *See, e.g.*, *How to find brands and codes on Aliexpress – Hidden Offer*, Alimaniac, alimaniac.com/aliexpress-articles/brand-codes-coupons-aliexpress-tricks-find-replica; *How to find brands with Aliexpress Brand Finder List 2018*, Trust Sellers, trustsellers.com/how-to-find-brands-on-aliexpress-brand-finder; *Guide to Finding Branded Items Replicas on AliExpress 2019 (Updated December)*, Best Chinese Replicas, bestchinesereplicas.com/guide-branded-items-replicas-aliexpress-2019/; *How to find Original Brands in AliExpress + Chinese Alternatives – Complete Guide*, Alix Blog, alixblog.com/en/find-brands-aliexpress/.

While Plaintiff is not alleging each Seller Alias is commonly owned, often several Seller Aliases are commonly owned. *See* Gaudio Dec. at ¶¶ 23-24. For example, in the last three years, over fifty percent of seller aliases on eBay have been commonly owned by one individual or entity. *Id.* at ¶ 24. In fact, there have been numerous instances where over a dozen seller aliases were owned or operated by the same individual or entity. *Id.* Plaintiff's counsel even had a recent case where over forty of the seller aliases were owned by the same individual or entity. *Id.*

Plaintiff's specific factual allegations that Defendants are working in a similar manner and during the same time period to sell Counterfeit GM Products, collectively in the same "occurrence of mass harm," show a logical relationship supporting joinder. *Bose Corp.*, 334 F.R.D. at 516. Even if each Defendant is not directly coordinating with every other Defendant (which Plaintiff is not arguing), Plaintiff's allegations show that Defendants "take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's] trademarks with impunity." *Id.* "[I]t is plausible that Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they do not engage in direct communication or coordination." *Id.* Defendants are alleged to be infringers, and "want to blend in to cause consumer confusion." *Id.* at. 514. As a result, it is not possible to link all or clusters of seller aliases together using arbitrary commonalities. Likewise, Plaintiff is not required to show and provide evidence that each of the Seller Aliases is commonly owned at the pleading stage, nor is that what joinder requires. In addition to not being required by Fed. R. Civ. P. 20, such linking efforts are extremely cumbersome and time consuming at the pleading stage, especially without adversarial presentation and the opportunity to conduct discovery.

### III. THE MINORITY APPROACH IN THIS DISTRICT DOES NOT PERMIT JOINDER OF ANY DEFENDANTS

As explained above, there is no controlling Seventh Circuit authority defining a single transaction or occurrence for purposes of joinder. Courts in this District have taken a narrower position than *Bose Corp.* and define "transaction, occurrence or series of transactions and occurrences" to require linking unique information between Seller Aliases (*e.g.,* email addresses, phone numbers, etc.). *See Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 184 (N.D. Ill. 2020) (Chang, J.) ("*Estée Lauder I*"); *Estée Lauder Cosmetics Ltd., et al. v. The Partnerships, et al.,* No. 20-cv-00845 (N.D. Ill. Jun. 22, 2020) (Lee, J.) (Docket Entry No. 40) ("*Estée Lauder II*") (together, the "Minority Approach Decisions"). This narrow approach does not permit joinder of *any defendants*. Rather, it requires that a plaintiff show that multiple e-commerce store seller aliases are operated by the *same* individual or entity, *i.e.*, a single defendant. Moreover, the information required to meet such a stringent requirement is typically not available prior to court-ordered discovery, and even if it was, could easily be circumvented by defendants using false or different information.

The Minority Approach Decisions rely on distinguishable cases, construe allegations in the light most favorable to defendants,[5] and undervalue certain considerations of judicial economy. For example, both cite the non-binding *Slep-Tone Entm't Corp. v. Roberto* case for the proposition that multiple defendants alleged to have infringed the same patent or trademark in a similar manner is not sufficient to establish joinder. 2013 U.S. Dist. LEXIS 151923, at *2 (N.D. Ill. Oct. 22, 2013). However, in *Slep-Tone Entm't Corp.*, the defendants were identifiable, distinct individuals and restaurants providing karaoke entertainment. *Id*. There were no allegations in *Slep-Tone*

---

[5] A court must construe the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences" in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

10

*Entm't Corp.* that the defendants were unknown and working in a similar manner and during the same time period as part of the same "occurrence" of mass harm, *i.e.*, the swarm of Defendants selling Counterfeit GM Products attacking Plaintiff's federally registered trademarks at once. *See Bose Corp.*, 334 F.R.D. at 516. The Minority Approach Decisions also construed facts in the light most favorable to the defendants by downplaying other commonalties between seller aliases as merely coincidental. *See, e.g*. *Estée Lauder I*, 334 F.R.D. 188-89 ("[i]t is just as likely that each online retailer decided to avoid being shut down yet again by removing the trademarks"); *Estée Lauder II* at p. 9 ("defendants with nearly identical product descriptions may in fact share no ties, with each simply copying the same description from elsewhere").

Finally, recognizing that nearly all defendants settle or default in similar cases, the Minority Approach Decisions reason that "this Court must evaluate the evidence submitted in support of liability and, eventually, damages" which the Court reasoned undermines judicial economy. *Estée Lauder I*, 334 F.R.D. at 189. However, allegations in the complaint are accepted as true if a defendant defaults, so there would not be any evidence beyond plaintiff's allegations to evaluate with respect to liability. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). Moreover, Plaintiff has annotated its evidence of infringement [18] to assist the Court by identifying which trademark each Defendant infringed, which should ease the Court's evaluation of the evidence submitted for liability. Regarding a damages award, Plaintiff will likely be seeking a statutory damages award pursuant to 15 U.S.C. § 1117(c). *See, e.g., Chapter 4 Corp. v. Fopu Import and Export Co., Ltd. Store, et al*., No. 20-cv-04736 (N.D. Ill. Oct. 27, 2020) (Docket No. 49). The Minority Approach Decision Courts, like other Courts in this District, have formulated baseline statutory damages awards for *defaulting* defendants who do not appear or participate in

11

the litigation.[6] There is no "ensuing discovery and variety of defenses" to evaluate when a defendant defaults. *Estée Lauder I*, 334 F.R.D. at 190. *See also*, *Estée Lauder II* at p. 7 (citing to statutory damages cases involving defendants that appeared and made an adversarial presentation). Further, if additional materials would be helpful to the Court to evaluate damages, the Court can request additional briefing.

*SanDisk LLC v. tinabeet, et al.*, No. 18-cv-08335 (N.D. Ill. Mar. 8, 2019) (Chang, J.) is illustrative to several points raised above. In *SanDisk LLC*, the Court found that joinder of two defendants was proper only "because of the date/time stamp within minutes of each other and the almost identical (except 1 digit) return-address labels." However, the two defendants in that case ended up not being related and one of the defendants operated another seller alias that was severed into a different case. Gaudio Dec. at ¶ 6. This resulted in two separate cases with the same parties instead of a single case. In addition to this example, Plaintiff's counsel has encountered dozens of other situations where seller aliases lack narrow, specific identifiers, but are commonly owned by a single defendant. *Id*. at ¶ 23.

### IV. WELL-PLEADED ALLEGATIONS SATISFY FED. R. CIV. P. 20(A)(2)(B)

Plaintiff's well-pleaded allegations also satisfy Fed. R. Civ. P. 20(a)(2)(B), which provides that joinder is proper if "any question of law or fact common to all defendants will arise in the action." In this Case, Defendants are infringing the same trademarks in the same manner. [1] at ¶ 3; *see also* [18]. The methods Plaintiff used and will use to investigate, uncover, and collect evidence about any infringing activity will be the same or similar for each Defendant. While each Defendant may later present different factual evidence to support individual legal defenses, prospective factual distinctions do not defeat the commonality in facts and legal claims that support

---

[6] The vast majority of those awards were in the bottom 25% of the $1,000 - $2 million statutory damages range provided by 15 U.S.C. § 1117(c).

joinder under Fed. R. Civ. P. 20(a)(2)(B) at this stage in the litigation. *See First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 251–52 (N.D. Ill. 2011) (Castillo, J.).

## V.   JOINDER IS CONSISTENT WITH FAIRNESS, CONVENIENCE AND JUDICIAL ECONOMY

Joinder at this stage also serves the important interests of convenience and judicial economy, leading to a just, speedy, and inexpensive resolution for Plaintiff, Defendants, and this Court. Joinder does not create any unnecessary delay, nor does it prejudice any party. Conversely, severance is likely to cause delays and prejudice Plaintiff and Defendants. Defendants may be required to defend identical, concurrent lawsuits if severed prematurely into separate cases (which is what happened in *SanDisk* above). Additionally, the Federal Rules of Civil Procedure only apply to the extent that they "affect any party's substantial rights." Fed. R. Civ. P. 61; *see also Coach, Inc. v. 1941 Coachoutletstore.com*, 2012 U.S. Dist. LEXIS 1311, at *12 (E.D. Va. Jan. 5, 2012). Plaintiff anticipates that Defendants will be individually subject to default, and "there is no prejudice to any defaulting defendant, whose liability may be established upon default irrespective of the presence of any other defendant." *Id.*; *Zou v. The Entities and Individuals Identified in Annex A*, No. 23-cv-16600 (N.D. Ill. Mar. 8, 2024) (unpublished) (Docket No. 60) ("[t]he Court has little reason to believe that any risk arises of unfairness or denial of individual justice to Defendants at this stage in the litigation. The case against each of them will be individually considered for purposes of any ruling on the merits").

The resources of the Court, other judges in this District, and other Districts will be substantially taxed if Plaintiff's claims against Defendants are severed into multiple separate lawsuits. "Requiring the filing of separate complaints could flood the courts with thousands of additional single defendant Lanham Act cases, with no difference in resolution of nearly every case in a practical sense. The only thing that will inevitably occur is the slowdown of adjudications

13

of other lawsuits, or the decrease of filings of cases which on their face have alleged plausible violations of the Lanham Act." *Bose Corp.*, 334 F.R.D. at 517, n.6. *SanDisk* illustrates the inefficiencies identified in *Bose Corp.* that result from narrow approaches to joinder. Importantly, such impediments would also reduce the ability of Plaintiff and other brand owners to effectively protect their intellectual property rights and consumers in a cost-effective manner. Online counterfeiting is a rampant and widespread issue for brand owners because, in recent years, marketplace platforms have emphasized opening and marketing their services to sellers located in China[7] seeking to sell directly to U.S. consumers. Gaudio Dec. at ¶ 9. According to a Customs and Border Protection ("CBP") report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights ("IPR") violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. *Id.* at ¶ 11. Cases like the present case are one of the few effective mechanisms for stopping and deterring online counterfeiting. *See id.* at ¶¶ 6-8. As explained in Section III *supra*, attempts to narrowly define what constitutes a "single transaction or occurrence" have proven arbitrary and unreliable. Moreover, Defendants would quickly evolve in a coordinated fashion to avoid what a court found as a "single transaction or occurrence" to frustrate enforcement efforts.

In sum, Plaintiff's well-pleaded allegations establish that the named Seller Aliases are participating in the same unlawful occurrence or series of occurrences and that joinder is proper. Plaintiff (as well as other brand owners) would be severely prejudiced if they were required to file separate lawsuits simply because Defendants registered a particular e-commerce store using a different Seller Alias. *Shambour v. Carver County*, 2014 U.S. Dist. LEXIS 110267, at *17 (D.

---

[7] The leader of Alibaba's Anti-Counterfeiting Special Task Force noted that "[a]fter we clean up online shops selling counterfeits, the counterfeiters usually change their identities and places of dispatch, using more covert means to continue selling online … Most counterfeiting dens are hidden and well-organized. For example, we encountered a village producing counterfeits. The villagers installed cameras everywhere and when they saw outsiders entering, they became vigilant and even threatened us." Gaudio Dec. at ¶ 10.

14

Minn. Aug. 11, 2014) ("In the matter at hand, joinder is proper because the alleged acts similarly support a larger allegation of a systemic problem and the Court is persuaded that keeping Shambour's claims together is not only permissible but preferable.").

## CONCLUSION

This Court should exercise its discretion and permit joinder of Defendants at this preliminary, pre-discovery stage. Otherwise, Plaintiff is left without an effective and efficient way to combat rampant infringement of its federal trademark rights, and counterfeiters like Defendants will be permitted to operate with impunity and continue to confuse U.S. consumers. This approach is consistent with the one taken by other courts for over a decade. Given the examples of market coordination by Defendants in this Case and similar defendants observed across hundreds of cases, Plaintiff's factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, satisfying Rule 11(b)(3).

Dated this 25th day of October 2024.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Marcella D. Slay
Lucas A. Peterson
Greer, Burns & Crain, Ltd.
200 West Madison, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
mslay@gbc.law
lpeterson@gbc.law

*Counsel for Plaintiff General Motors LLC*